**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:19CV-P28-TBR**

ERIC UNTHANK                                                                                    PLAINTIFF

v.

JAMES BEAVERS *et al*.                                                                    DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Eric Unthank filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. Plaintiff also filed an amended complaint (DN 6), which Plaintiff states is a typed copy of his original handwritten complaint. The Court construes the filing as a motion to amend the complaint. He subsequently filed a motion to amend the complaint (DN 8), in which he identifies the names of two Defendants whom he named as "Jane Does" in the original complaint and adds a new Defendant, Cody Edmonds. Upon review, **IT IS ORDERED** that the motions to amend the complaint (DNs 6 and 8) are **GRANTED**. *See* Fed. R. Civ. P. 15(a)(2).

The **Clerk of Court is DIRECTED** to substitute Cassandra Moore for Jane Doe 1 in the docket sheet and to substitute Terri Sexton for Jane Doe 2 in the docket sheet. The **Clerk is further DIRECTED** to add Cody Edmonds as a Defendant in the docket sheet.

This matter is before the Court upon initial review of the action pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss some of Plaintiff's claims and allow other claims to proceed for further development.

**I. SUMMARY OF FACTUAL ALLEGATIONS[1]**

Plaintiff is a convicted inmate at the Kentucky State Penitentiary (KSP). He names the following KSP personnel as Defendants: James Beavers, identified as an "Internal Affairs

---

[1] Upon review of the original complaint and amendments, the three filings are almost identical in substance. The Court summarizes and quotes herein the second amended complaint, in which the only changes from the original and first amended complaint are that Plaintiff substitutes the names of Defendants Cassandra Moore and Sexton for the Jane Doe Defendants and includes actions taken by Defendant Edmonds.

Coordinator (Retired)"; Seth Mitchell, an "Internal Affair Lieutenant"; Richard Moore, Neil Gardner, and Cody Edmonds, correctional officers; Steven Birdsong, a sergeant; Garyth Thompson, a major. He also sues Cassandra Moore and Terri Sexton, whom he states are nurses "contracted through WellPath formerly Correct Care Solutions" and Karen Ramey, a nurse practitioner also contracted through WellPath. He sues all Defendants in their individual capacities only, with the exception of Defendants Thompson and Ramey, whom he sues in both their individual and official capacities.

Plaintiff states that on February 21, 2018, there was a "disturbance" in the KSP library and the prison was put under lockdown. According to Plaintiff, approximately five minutes later, he was standing in front of his cell when he was approached by officers and ordered to "cuff up." Plaintiff states that he "complied with all orders and was placed in metal handcuffs and metal leg restraints and was then proceeded to be lead by officers off the walk to Restricted Housing Unit as a suspected participant in the disturbance in the library, where staff members were assaulted."

Under the heading "Excessive Use of Force," Plaintiff asserts that he "was following orders and was totally compliant when Defendants James Beavers and Neil Gardner laced their hands/arms through the Plaintiffs arms, bent the plaintiff over at the waist into a totally defenseless position. While Defendant Seth Mitchell initiated the all too familiar chant of 'stop resisting.'" He further describes the incident as follows:

> [] While exiting the 3rd floor of 5 cell house in a totally compliant and defenseless position only utilized for staff assaults, Defendant James Beavers rammed the Plaintiffs head into the steel framing for the security gate. While still compliant and in a defenseless position and at the mercy of the Defendants Beavers, Gardner and Mitchell, Plaintiff was lead down five flights of stairs forcefully, while Defendant Mitchell continued to scream "stop resisting."
> [] On the side walk between 5 cell house and 4 cell house, Defendant Mitchell stated, "Let me get some!" Defendants Mitchell and Beavers traded places in the escort to 3 cell house recreation cages. Outside of 4 cell house on the service access to the recreation yard, the Plaintiff was force walked "still in

leg restraints, still bent over in a defenseless position" at a very fast pace to where the Plaintiff could not keep up. Defendants Mitchell and Gardner forced the Plaintiff face first to the ground. Defendant Mitchell then dropped his knee into the Plaintiffs back causing the left hand cuff to further tighten and causing significant damage to the Plaintiffs left wrist.

[] While following orders attempting to stand Defendant Gardner used his closed fist in an upper cut motion to help the Plaintiff to stand. The Plaintiff was then escorted to 3 cell house recreation cages, where the Plaintiff was compliant to all orders given.

[] While standing in handcuffs and leg restraints inside of the recreation cage, Defendants Beavers and Mitchell started making comments towards the Plaintiffs notoriety in front of another inmate seeking to defame and intentionally cause potential danger to the Plaintiff, during which multiple unidentified officers witnessed these actions.

[] While being removed from 3 cell house recreation cages to be escorted to the 7 cell house restricted housing unit, the Plaintiff was following all orders given. Defendants Gardner and Richard Moore laced their arms through the Plaintiffs again bending the Plaintiff over causing unnecessary strain on the Plaintiffs shoulders, back and wrists.

Plaintiff maintains that during the escort, Defendant Birdsong "witnessed the unnecessary use of force, and as a supervisor failed to intervene, while Defendants Edmonds and Moore drug the Plaintiff and used the Plaintiff's shirt to choke the Plaintiff almost into unconsciousness." He also states, "In the beginning, middle and end of this escort the Plaintiff was complying with all orders given as video evidence will support and the use of force was unnecessary and was deliberate to seek lynch mob justice. This type of escort is only reserved for alleged assaults on staff."

Under the heading "Denial of Medical Care," Plaintiff states, "During the escort, the Plaintiff told both Defendants Edmonds and R. Moore, 'that they had broke the Plaintiffs wrist.' Defendants then stated, 'Good.'" According to Plaintiff, he also told Defendant Cassandra Moore about the injuries he sustained. He states, "Defendant C. Moore failed to acknowledge the injuries and then put in her report, no injuries were present." Plaintiff states that he was placed into 7 cell house and "then stripped of all clothing except for his boxer shorts, no blankets or a cup to drink water for two and a half days and was refused any and all materials to file

grievances on Medical issues." He continues that after two weeks he was able to put in a sick call request, but he states that by that time, the injuries to his knees and chin and "bruising throughout his body" had healed. He states, "The Plaintiff was deliberately kept secluded until his injuries were healed and was unable to file any grievance process."

Under the heading "Negligence," Plaintiff states, "During the sick call appointment, Defendant Terri Sexton did NOT even evaluate claims of the injuries sustained to left wrist and arm, and passed it off as nerve damage without inspecting the left wrist and arm." He reports that he was referred to the nurse practitioner, Defendant Ramey, "who then had done nothing, but re-iterate the nerve damage, stating, 'it could take several months or even never heal.' All without even inspecting Plaintiffs wrist or arm." Plaintiff states, "Both Defendants Sexton and Ramey demonstrated negligence by failing to inspect the injuries of the Plaintiff."

Under the heading "Retaliation," Plaintiff states that he "filed a grievance on the issues of the use of excessive force, where Defendant Garyth Thompson, in an attempt to derail the grievance procedure issued two disciplinary reports in a retaliatory manner." Plaintiff states that he "still proceeded in the grievance process to no avail."

With regard to the alleged excessive-force incident, Plaintiff states that the actions violated the Eighth Amendment and constituted the torts of assault and battery. He also states, "The failure of Defendant Birdsong to take disciplinary or other action to curb the known pattern of physical abuse of inmates by Defendants Edmonds and R. Moore constituted deliberate indifference to the Plaintiff's and other Prisoner's safety, and contributed to and proximately caused above-described violation of the Eighth Amendment rights and assault and battery."

As relief, Plaintiff requests declaratory relief; injunctive relief in the form of ordering Defendants Ramey, Sexton, and C. Moore, to provide physical therapy and other medical treatment to Plaintiff and ordering Defendant Thompson to "[e]xpunge the disciplinary report

convictions described in this complaint from the Plaintiff's institutional record"; and compensatory and punitive damages.

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

# III. ANALYSIS

## A.  § 1983 claims

### 1.  Official-capacity claims

Plaintiff sues Defendants Thompson and Ramey in their official capacities.

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an

entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Defendant

Thompson is an employee of KSP and is therefore a state employee.  Claims brought against

state employees in their official capacities are deemed claims against the Commonwealth of

Kentucky.  *See Kentucky v. Graham*, 473 U.S. at 166.  State officials sued in their official

capacities for monetary damages are not "persons" subject to suit under § 1983.  *Will v. Mich.

Dep't of State Police*, 491 U.S. 58, 71 (1989).  Further, the Eleventh Amendment acts as a bar to

claims for monetary damages against state employees or officers sued in their official capacities.

*Kentucky v. Graham*, 473 U.S. at 169.

Therefore, Plaintiff's official-capacity claim against Defendant Thompson for monetary

damages must be dismissed for failure to state a claim upon which relief may be granted and for

seeking monetary relief from a Defendant who is immune from such relief.

Plaintiff's official-capacity claim against Defendant Ramey is construed as brought

against her employer, WellPath.  The Sixth Circuit has held that the analysis that applies to a

§ 1983 claim against a municipality applies to a § 1983 claim against a private corporation such

as WellPath.[2]  *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell

v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)) ("*Monell* involved a municipal

---

[2]"It is clear that a private entity which contracts with the state to perform a traditional state function such
as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of
state law.'"  *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54
(1988)).

corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.* Thus, liability of a contracted private entity must be based on a policy or custom of the entity. *Street v. Corr. Corp. of Am.*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). To state a claim, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).

In the instant case, Plaintiff alleges no policy or custom on the part of WellPath that caused his alleged injuries. The complaint alleges isolated occurrences affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Accordingly, Plaintiff's official-capacity claim against Defendant Ramey will be dismissed for failure to state a claim upon which relief may be granted.

## 2. Excessive force and failure to intervene

Upon review, the Court will allow Plaintiff's § 1983 claims for excessive force to proceed against Defendants Beavers, Mitchell, Richard Moore, Gardner, and Edmonds in their individual capacities. The Court will also allow Plaintiff's § 1983 claim for failure to intervene to proceed against Defendant Birdsong in his individual capacity.

### 3. Verbal abuse and threats

Plaintiff alleges that Defendants Beavers and Mitchell made "comments towards the Plaintiffs notoriety in front of another inmate seeking to defame and intentionally cause potential danger to the Plaintiff." The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, abusive and threatening language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

Accordingly, Plaintiff's claims based upon abusive or threatening language by Defendants Beavers and Mitchell will be dismissed for failure to state a claim upon which relief may be granted.

### 4. Denial of medical care

Upon review, the Court will allow Plaintiff's § 1983 claims for deliberate indifference to his serious medical needs to continue against Defendants Cassandra Moore, Sexton, and Ramey in their individual capacities.

### 5. Conditions of confinement

Plaintiff states that he was placed into 7 cell house and "then stripped of all clothing except for his boxer shorts, no blankets or a cup to drink water for two and a half days . . . ." To the extent Plaintiff is alleging a separate claim based on these conditions, the Eighth

Amendment requires that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The Court finds that the conditions described by Plaintiff, lasting only two and a half days, were of a short duration and do not constitute a sufficiently grave deprivation to give rise to an Eighth Amendment violation. *See, e.g.*, *Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) (holding that an allegation of a seven-day deprivation of a mattress, sheets, and a blanket failed to state an Eighth Amendment claim); *Jones v. Toombs*, No. 95-1395, 1996 U.S. App. LEXIS 6545, at *2 (6th Cir. Feb. 15, 1996) (holding that as a matter of law defendants did not violate inmate's Eighth Amendment rights by depriving him of a mattress for a two-week period); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (holding that an eleven-day stay in an unsanitary cell was not unconstitutional because of the relative brevity of the stay and the availability of cleaning supplies); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation.").

Therefore, Plaintiff's claims concerning the conditions of his cell while in Cell House 7 must be dismissed for failure to state a claim.

**6. Grievance handling**

To the extent that Plaintiff is alleging a claim against any Defendant based on the handling of his grievances, his claim also fails. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").

Therefore, Plaintiff's claims concerning the handling of his grievances will be dismissed for failure to state a claim upon which relief may be granted.

**7.    Retaliation**

Upon review, the Court will allow Plaintiff's § 1983 retaliation claim to proceed against Defendant Thompson in his individual capacity and in his official capacity for declaratory and injunctive relief only.

<strong>B.  State-law claims</strong>

Finally, upon review, the Court will allow Plaintiff's state-law claims for assault and battery to proceed against Beavers, Mitchell, Richard Moore, Gardner, Edmonds, and Birdsong. The Court will also allow Plaintiff's state-law claims of negligence to proceed against Defendants Cassandra Moore, Sexton, and Ramey.

## IV. ORDER

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the official-capacity claim for monetary damages against Defendant Thompson is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claim against Defendant Ramey and his claims based on verbal abuse and threats, his conditions of confinement, and the handling of his grievances are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the claims that have been permitted to proceed. In allowing the claims to proceed, the Court passes no judgment on their outcome or ultimate merit.

Date:   July 19, 2019

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.010